IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **THE UNITED STATES for the use and benefit of ROC CARTER COMPANY, LLC,** | : : : : | |
| Plaintiff, | : : | Civil Action No. 5:09-CV-101 (HL) |
| v. | : : | |
| **FREEDOM DEMOLITION, INC.,** et al., | : : : | |
| Defendants. | : : | |

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment against Freedom Demolition, Inc. ("Freedom") (Doc. 10) and the Motion to Dismiss of Defendants' Hunt Building Company, L.T.D. ("Hunt"), Fidelity and Deposit Company of Maryland ("Fidelity"), and Federal Insurance Company ("Federal") (Doc. 4). For the following reasons, Defendants' Motion is granted and Plaintiff's Motion is denied as moot. This order addresses all pending motions before the Court.

### I.   BACKGROUND[1]

Plaintiff brought this action under the Miller Act, 40 U.S.C. § 3131 *et seq.* to

---

[1] Defendant's motion is a factual attack challenging this Court's subject matter jurisdiction. Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1999).

obtain payment for the work, material, and labor it provided as a subcontractor in the construction project for building military housing units ("housing project") at Robins Air Force Base in Georgia. The housing units were to be built on land owned by the United States.

Plaintiff seeks payment in excess of $200,000 from Hunt, the general contractor on the housing project, Freedom, a subcontractor, and from Fidelity and Federal, sureties on payment and performance bonds issued by Hunt. Plaintiff also requests prejudgment interest and attorney's fees. At issue is whether the Miller Act applies to Plaintiff's action. Also at issue is whether default judgment can be entered against Freedom.

In 2006, the United States Air Force ("Air Force") issued Solicitation AFCEE-FY-06-0003 for the housing project. A proposal for the housing project was submitted by or on behalf of Robins Air Force Base Properties II, L.L.C ("Robins Properties"). On April 16, 2007, the Air Force accepted Robins Properties' proposal. The accepted proposal was named the "Selected Proposal."

On October 1, 2007, the United States entered into a 50 year lease of real property with Robins Properties for the purpose of constructing, operating, and maintaining the housing project. The Secretary of the Air Force entered into the lease under his authority contained in 10 U.S.C. § 2878.[2] The leased premises

---

[2] Title 10 of U.S.C. § 2878(a)-(e) states in relevant part

consisted of the land subject to the housing project.  The lease was conditioned upon Robins Properties constructing and completing the housing project and it required that the Air Force issue written authorization before construction on the housing project could begin.  Additionally, the parties incorporated the Selected Proposal into the lease. Notably, the lease stated that "in the event of any inconsistency between any provision of the Selected Proposal and any provision of this Lease, the Lease provision shall control."  The lease limited the Government's liability "to that of lessor of the Leased Premises."  Moreover, it stated that "it is specifically understood that the demolition, design, construction, renovation, and operation, and maintenance of the Leased Premises Improvements is a private undertaking."  The improvements to the leased premises were to be held in fee simple by Robins Properties.  The lease required that Robins Properties provide the Air Force payment and performance bonds.

Robins Properties, as lessee and entity responsible for completing the housing project, then entered into a Design-Build Agreement with Hunt.  The Design-Build

---

> The Secretary concerned may convey or lease property or facilities . . . to eligible entities for purposes of using the proceeds of such conveyance or lease to carry out activities under this subchapter . . . The lease of property . . . shall be for such consideration and upon such terms and conditions as the Secretary concerned considers appropriate for the purposes of this subchapter and to protect the interests of the United States.

10 U.S.C. § 2878(a)-(e)

Agreement named Hunt as the design-builder for the housing project. Of note is that the agreement was signed on behalf of the parties by the same individual, Robin Vaughn, Senior Vice President of both companies. Additionally, Robins Properties' and Hunt's principal offices of business are located at the same address.

To meet its lease obligation, Robins Properties included in the Design-Build Agreement a requirement that Hunt provide and deliver performance and payment bonds naming the Secretary of the Air Force as a co-obligee. Hunt received performance and payment bonds from Fidelity and Federal. The bonds ran in favor of the Secretary of the Air Force as well as Capmark Capital, Inc., the lender that financed the housing project. The principal named on the bonds was Hunt Development Group, L.P. The bonds named Fidelity and Federal as co-sureties.

On Mary 6, 2008, Hunt subcontracted the demolition and abatement aspects of the housing project to Freedom. Freedom received performance and payment bonds running in favor of Hunt from Builders & Contractors Indemnity Company, Ltd. Freedom then subcontracted to Plaintiff most of its demolition responsibilities. On September 3, 2008, Hunt consented and acknowledged a Joint Check Agreement between Freedom and Plaintiff; any money Hunt paid to Freedom would be jointly paid to Plaintiff.

Plaintiff claims that in substantially performing its contract with Freedom, it incurred expenses totaling $352,288.50, of which only $119,000.00 was paid. Plaintiff requested payment in the amount due from Freedom and Hunt. After

Freedom and Hunt declined to pay, Plaintiff notified Hunt's sureties, Fidelity and Federal, that it was seeking recovery against the performance and payment bonds issued by Hunt.

Plaintiff's four-count Complaint seeks recovery from Freedom, Hunt, Fidelity, and Federal, in the amount of $206,288.50. Count I claims breach of contract under the Miller Act. Count II claims surety liability also under the Miller Act. Count III is for prejudgment interest and Count IV seeks attorney's fees. Hunt, Fidelity, and Federal's Motion to Dismiss argues that Plaintiff's entire Complaint should be dismissed because (1) the Court does not have subject matter jurisdiction over Plaintiff's claims, the Complaint does not state a claim upon which relief can be granted, and Plaintiff failed to name an indispensable party; and (2) the Plaintiff entered into an enforceable arbitration agreement which requires staying Plaintiff's action pending the outcome of the arbitration. In turn, Plaintiff argues that its action should not be dismissed or stayed. It also argues that the Court should enter default judgment against Freedom.

II.  **SUBJECT MATTER JURISDICTION UNDER THE MILLER ACT**

    A.  **Scope of the Miller Act.**

Defendants assert that the Court does not have subject matter jurisdiction over Plaintiff's claims in Counts I and II because they do not fall within the Miller Act. The Miller Act provides that all persons contracting "for the construction, alteration,

or repair of any public building or public work of the United States" at a cost exceeding $100,000.00 shall provide a payment bond "for the protection of all persons supplying labor and material." 40 U.S.C. § 3131(b); 40 U.S.C. § 3131(b)(2). The Act allows any person who has furnished labor or material for the construction of a "public building or public work" and who has not been paid in full to bring a civil action on the payment bond in federal district court. 40 U.S.C. § 3133(b)(1); 40 U.S.C. § 3133(b)(3).

State law liens may not be asserted against federally owned lands or buildings. United States ex rel. Mississippi Road Supply Co. v. H.R. Morgan, Inc., 542 F.2d 262, 265 (5th Cir. 1976). Thus, the purpose of the Miller Act is to protect subcontractors and materialmen working on federal projects. Id. By requiring a payment bond from the general contractor, Congress gave subcontractors and materialmen the same security for payment as would exist if they were working on private projects. United States ex rel. Blumenthal-Kahn Elec. Ltd. v. American Home Assurance Co., 219 F. Supp. 2d 710, 714 (E.D. Va. 2002). The Miller Act should receive a liberal construction in order to protect those whose labor and material go into federal projects. United States ex rel. Sherman v. Carter, 353 U.S. 210, 216, 77 S. Ct. 793, 1 L.Ed.2d 776 (1957).

Defendants assert that Plaintiff's claims do not involve a "public building or public work of the United States." Although the Miller Act does not define "public building or public work of the United States," federal courts interpreting the phrase

have provided guidance. The Supreme Court addressed the definition of "public work" in <u>United States ex rel. Noland Co. v. Irwin</u>. In that case, the Court held that a contract made between the United States and a contractor for the construction of a library building on Howard University's campus was a "public work" within the meaning of the Miller Act. 316 U.S. 23, 27, 62 S. Ct. 899, 86 L.Ed. 1241 (1942). In <u>Mississippi Road Supply</u>, the Fifth Circuit stated that the Miller Act applies "either (1) [when] the subcontractors and suppliers of material could assert an action for equitable recovery against the United States or one of its agencies; or (2) [when] normal state labor and material lien remedies are unavailable because of federal ownership of lands." <u>Mississippi Road Supply</u>, 542 F.2d at 266. According to the court, the typical Miller Act public or building work contract is where the United States both owns the land and contracts for its improvement. <u>Id.</u> at 265. Other courts have indicated that at a minimum the United States must be a contracting party in a contract for construction, alteration, or repair of a building or work, and a bond must run in favor of the United States. <u>United States ex rel. Gen. Elec. Supply Co. v. United States Fidelity & Guaranty Co.</u>, 11 F.3d 577, 581 n. 3 (6th Cir. 1993) (<u>citing</u> <u>United States ex rel. Motta v. Able Bituminous Contractors, Inc.</u>, 640 F. Supp. 69, 71 (D. Mass. 1986)); <u>see also</u> <u>United States ex rel. Miller v. Mattingly Bridge Co.</u>, 344 F. Supp. 459, 461(W.D. Ky. 1972) (noting that the Miller Act "indicates strongly that Congress in using the word "contracts" had in mind only contracts between the United States and prime contractors, and not contracts to which the United States

was not a party.").

Thus, these cases show that there are three elements that must be present in order to have a contract for the construction of a "public work or public building": (1) there must be a construction contract; (2) the United States must be a party to the construction contract; and (3) the contract must require that bonds be secured that run in favor of the United States.

### B.     The Miller Act Does Not Apply to Plaintiff's Claims.

The issues presented by Defendants' Motion to Dismiss Plaintiff's claims in Counts I and II are whether the lease between the United States and Robins Properties is a construction contract for a "public work"; and if not, whether the Design-Build contract between Robins Properties and Hunt is a contract for the construction of a "public work." The Court finds neither is a construction contract for a public work and therefore, subject matter jurisdiction under the Miller Act is not present in this case.

#### 1.     The Lease Is Not a Construction Contract.

The plain language of the lease between the Air Force and Robins Properties demonstrates that the lease falls outside the Miller Act. Two of the elements necessary to have a Miller Act contract are present, but the third element is missing. The lease was entered into by the United States by way of the Secretary of the Air Force, who was acting on behalf of the United States under his authority found in 10

U.S.C. § 2878; thus, the United States is unambiguously a party to the contract. Additionally, Paragraph 17.5 of the lease requires that Robins Properties secure payment and performance bonds running in favor of the United States. However, the lease is not a contract for the construction of the housing project. It is solely a contract for the transfer of an interest in real property.

The conclusion reached by the Court requires a detailed analysis of the lease provisions. According to the lease, the Air Force agreed to lease the property to Robins Properties for the "purposes of demolition, design, construction, renovation, operation and maintenance of a rental housing development . . . ." The lease incorporated by reference the Selected Proposal. The lease also required that "[Robins Properties] . . . demolish, construct, renovate, replace, own, operate and maintain the project in accordance with the terms and conditions of the Selected Proposal."

The Selected Proposal is not evidence before the Court on this Motion to Dismiss. It has not been attached to any affidavit by either party. When a defendant asserts a factual challenge to subject matter jurisdiction, the plaintiff has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction. Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. May 1981). Plaintiff argues that the Selected Proposal was a construction contract between the United States and Hunt. Plaintiff asserts that Hunt engaged in a contractual "slight of hand" by creating a corporate entity, Robins Properties, for the purpose of

9

entering into a lease with the United States. Plaintiff asserts that Robins Properties then contracted back the contract for the housing project to Hunt. While it may be true that the Selected Proposal is a construction contract for the housing project between the United States and Hunt or Robins Properties,[3] nevertheless, because the Selected Proposal is not before the Court, the Court cannot engage in a speculative analysis as to the terms of the Selected Proposal and the extent of the contractual obligations of the parties. Thus, the Court does not find Plaintiff's assertions persuasive.[4]

Moreover, Plaintiff fails to carry its burden of persuasion even if the Court was to find that the Selected Proposal was a construction contract between the United States and Hunt. The Court makes this conclusion even though the Selected Proposal was incorporated by reference into the lease. Usually when a contract

---

[3] According to the Federal Acquisition Regulations, the Selected Proposal may be a construction contract between the United States and Robins Properties or Hunt. The relevant regulation states that the "contracting officer shall award a contract to the successful offeror by furnishing the executed contract or other notice of the award to that offeror." 48 C.F.R. § 15.504(a). In this case, the Air Force selected the housing project proposal submitted by Robins Properties and Robins Properties received notification of the award because it entered into the lease which expressly stated its proposal had been selected by the Air Force. What remains unclear, however, is the terms of the Selected Proposal and whether it is a contract for the construction of the housing project.

[4] The Court's conclusion is the same even though the subcontract between Hunt and Freedom identifies the Solicitation AFCEE-FY-06-0003 as the prime contract and the Change Order between Hunt and Freedom refers to the contract as number AFCEE-06-0003. The Selected Proposal and Solicitation are not before the Court for consideration; thus the Court cannot make any determination regarding the Selected Proposal's or Solicitation's terms.

incorporates another writing, that writing becomes part of the contract. Stock Equip. Co. v. Tennessee Valley Auth., 906 F.2d 583, 589 (11th Cir. 1990). Other lease provisions, however, show that the lease is unambiguously a lease contract and not a construction contract. Stated differently, the lease shows that the United States' construction contract was not fully incorporated into the lease. Paragraph 17.1 of the lease states that the "Government's sole and exclusive interest in and liability under this Lease are limited to that of lessor of the Leased Premises." It also states that "it is specifically understood that (I) the demolition, design, construction, renovation, operation, and maintenance of the Leased Premises Improvements is a *private undertaking*." (emphasis added). These provisions conflict with the incorporation of the Selected Proposal into the lease. Essentially, the lease provisions state that the lease is solely a lease, but the incorporation of the Selected Proposal into the lease may show that the United States is also a party to a construction contract.

The determining factor for the Court is that the lease expressly states that "in the event of any inconsistency or conflict between any provision of the Selected Proposal and any provision of this Lease, the Lease provision shall control." Following this directive, the Court finds that the lease provisions limiting the lease to a lease contract control. Thus, the lease between the United States and Robins

Properties is a solely a lease contract and not also a construction contract.[5]

The Court finds that there is no case directly on point to the facts presented here. Nonetheless, the Court's conclusion is supported by other relevant case law. In United States ex rel. Gen. Elec. Distrib. Corp. v. Centerline Gardens, Inc., 253 F.2d 133, 134-135 (6th Cir. 1958), the federal government entered into a 75 year lease of land under the Wherry Act, 12 U.S.C. § 1748d, with a private corporation. Id. The lease contemplated that the corporation would construct a housing project, but the lease contained no customary provisions of a construction contract. The corporation employed another corporation, as general contractor, to construct the housing project. The lease did not require that payment and performance bonds be posted. The court concluded that the lease was not a construction contract; the only construction contract was between the corporation and the general contractor. Id. This case is similar to Centerline. Although the lease incorporates the Selected Proposal for the construction of the housing project, the Selected Proposal conflicts with the lease provisions limiting the lease to a contract for the transfer of a leasehold interest. Any conflicts between the lease and the selected proposal must

---

[5] Plaintiff argues that the Miller Act applies to the lease because it is a government contract. It notes that the lease requires that Robins Properties comply with federal environmental laws and that disputes under the lease are governed by the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq*. While it is true that the lease is a government contract, it does not necessarily follow that it is a government contract for the construction of a "public work." As the Court has explained, three independent requirements must be satisfied in order to have a contract for the construction of a "public work."

be resolved in favor of the lease terms; thus the lease agreement between the Air Force and Robins Properties is expressly limited to a contract for the transfer of a leasehold interest.

Mississippi Road Supply is also factually similar to this case. In that case, the Mississippi Band of Choctaw Indians entered into a lease agreement with a private corporation, with the approval of the Secretary of the Interior. Mississippi Road Supply, 542 F.2d at 264. The lease required that the corporation secure bonds running in favor of the United States that would guarantee payment in full of claims made by persons working on the construction project contemplated by the lease. Id. The court declined to decide whether it had subject matter jurisdiction under the Miller Act. Id. at 266. It noted that it did not consider the lease to be a contract where the United States owns the land and contracts for its improvement. Id. at 265. Because the lease required bonds to run in favor of the United States, the court indicated that the lease may fall within the Miller Act. Id. at 266. It expressed concern, however, that if it did find that the Miller Act applied to the contract, it would stretch the Miller Act's jurisdictional grant to "dimly-lit limits." Id. Moreover, there appeared to be no reason why a state lien could not be asserted against the leasehold interest of the corporation. Id. Likewise, here, there appears to be no reason why Plaintiff cannot assert a lien against Robins' Properties leasehold interest.

Other cases resolve the question left open in Mississippi Road Supply

because they found that in order for the Miller Act to apply, the United States must be a party to the construction contract. Gen. Elec. Supply Co., 11 F.3d at 581 n. 3 (citing United States ex rel. Motta v. Able Bituminous Contractors, Inc., 640 F. Supp. 69, 71 (D. Mass. 1986); Mattingly Bridge, 344 F. Supp. at 462; United States ex rel. Hutto Concrete Co. v. Magna Bldg. Corp., 305 F. Supp. 1244, 1246 (S.D. Ga. 1969)). For example, in Mattingly Bridge, the United States was not a party to the construction contract and the bonds ran in favor of the State of Kentucky. Mattingly Bridge, 344 F. Supp. at 461. The court held the Miller Act did not apply. Id. 462. Also, in Bluementhal, the United States was connected to the construction contract because it owned the real property upon which an airport tunnel was to be built under the construction contract. Bluementhal, 219 F. Supp. 2d at 714. The court found that the Miller Act not apply because the authority that contracted for the construction project was expressly a political subdivision created by state statutes, which controlled the land by virtue of a lease from the federal government. Id.

The most persuasive case favoring Plaintiff is United States ex rel. Gamerston & Green Lumber Co. v. Phoenix Assurance Co. of New York, 163 F. Supp. 713 (N.D. Cal. 1958). There, the United States held title to the military base library subject to the construction contract. Id. at 714. Although the construction of the library was paid for by nonappropriated federal funds and did not name the United States as a party to the contract, the court found that the Miller Act applied. Id. at 715. The court reasoned that it was "immaterial whether the contract is made in the

name of the United States or such person or agency." Id.  Crucial to the court's conclusion was that the library was owned by the United States and paid for with federal funding, and therefore had to be regarded as a public building of the United States. Id. The court distinguished Centerline on the basis that the contract at issue was a construction contract and there was no intervening lease. Id. at 718. Gamerston is distinguishable from this case and therefore not applicable for two reasons.  First, the contract at issue is a lease contract and not a construction contract.  Second, Robins Properties is the owner of the improvements on the leased premises and the housing project was financed by private funds; thus, the United States' interest in the property is different from the United States' interest in the library in Gamerston.

In summary, the Miller Act is inapplicable to the lease because although the United States is a contracting party, the lease is not a construction contract.

### 2. The United States Is Not a Party to the Design-Build Agreement.

The Design-Build Agreement satisfies two of the three necessary requirements for the Miller Act to apply.  First, it is unambiguously a contract for the construction of the housing project.  Second, it requires that Hunt acquire payment and performance bonds that run in favor of the United States.  It cannot, however, be a Miller Act contract because the United States is not a party to the Design-Build Agreement.

The Design-Build Agreement is a construction contract expressly made between Robins Properties and Hunt.  The United States is not a party.  Plaintiff argues that the Design-Build Agreement incorporates by reference the Selected Proposal, which as the Court explained, may be a construction contract for the housing project between the United States and Robins Properties.  Plaintiff, misreads the Design-Build Agreement. The Amendment adds the statement "[a]s used herein, the term "Selected Proposal" means, . . . the proposal submitted by or on behalf of the Owner in response to the Solicitation of Offers . . . and selected by the United States . . . ."  Nowhere in the Design-Build Agreement or its Amendment does it state that the Selected Proposal is incorporated into the Design-Build Agreement.  Thus, the United States is not a party to the Design-Build Agreement.

The United States is not a party to the Design-Build Agreement even if, as Plaintiff argues, the parties engaged in a contractual "slight-of-hand."  Hunt and Robins Properties have the same corporate address and the Design-Build Agreement was signed by the same person on behalf of both parties.  Nonetheless, whether a contract is a construction contract for a public work depends on whether the United States is a party to the contract.  Here, the plain language of the Design-Build Agreement shows that the United States is not a party.

Notwithstanding that the United States is not a contracting party, Plaintiff argues that the Design-Build Agreement is a Miller Act contract because paragraph 11.2 of the Amendment to the Design-Build Agreement states that Hunt, to the

extent applicable, is to comply with the provisions of the Davis-Bacon Act, 40 U.S.C. § 3142. The Davis-Bacon Act applies to contracts where the Federal Government is a party and the contract is for the construction of public buildings and public works of the Government. 40 U.S.C. § 3142(a). The Act requires that the contractor pay the workers at least the minimum wage specified in the schedule furnished by the Secretary of Labor. 40 U.S.C. § 3142(b). The Plaintiff's argument is without merit. While it is certainly true that if the Davis-Bacon Act applies to a contract, then it is a federal contract for a public work and the contractor must comply with its provisions. It is not necessarily true, however, that the United States is a party to a contract because the parties agreed to comply with the Davis-Bacon Act. See Woodside Village v. Secretary of the U.S. Dept. of Labor, 611 F.2d 312, 315 (9th Cir. 1979) (explaining that the "converse is not necessarily true. Nothing in the Davis-Bacon Act precludes the parties from contracting with reference to it, even if . . . its requirements may not have been applicable by force of law . . . .) In other words, the parties are free to agree to provide Davis-Bacon Act wage protections to workers, but the parties' willful agreement does not mean that the contract becomes a government contract subject to the Miller Act.

Likewise, the fact that the Design-Build Agreement requires Hunt to furnish bonds running in favor of the United States does not make the contract a Miller Act contract. See Gen. Elec. Supply Co., 11 F.3d at 582 (stating that it is true that Miller Act projects require bonds, but that any project with a bond is not necessarily a Miller

Act project). It is also true that the Design-Build Agreement is not a contract for a "public work" even though the housing units were designed for the benefit of the military personnel. In Gamerston, the military base library was designed for the benefit of military personnel, but it was also paid for by federal funds and the United States owned the library after it was completed. Thus, the contract was for the construction of a "public work" because United States had a financial and ownership interest in the constructed property. Here, however, the United States did not fund the construction project nor did it own the housing units after they were completed. Accordingly, the Design-Build Agreement is not a contract for the construction of a "public work" and therefore it falls outside Miller Act.

### III. CONCLUSION

For the reasons set out above, the Miller Act does not apply to Plaintiff's claims found in Counts I and II and Defendants' Motion to Dismiss is granted. Plaintiff's claims in Counts III and IV are state law claims and must also be dismissed for lack of supplemental jurisdiction under 28 U.S.C. § 1367. Plaintiff's Motion for Default Judgment against Freedom is denied as moot.

The Court dismisses Plaintiff's action without prejudice. It appears that a state court in Georgia is the proper forum for this action.

**SO ORDERED,** this the 14th day of October, 2009.

*s/ Hugh Lawson*
**HUGH LAWSON, Senior Judge**

lmc